IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THEODORE D. JORDAN, II, | |
| Plaintiff, | CIVIL ACTION FILE |
| v. | NO. 1:04-CV-1451-GGB |
| EQUIFAX INFORMATION SERVICES, LLC; SALLIE MAE, INC.; and SLM FINANCIAL CORPORATION, | |
| Defendants. | |

**ORDER**

This matter is before the Court on Plaintiff Theodore D. Jordan's Motion for Attorney's Fees [Doc. 159]. The motion is based on Plaintiff's acceptance of an offer of judgment, dated October 10, 2007, from Defendants Sallie Mae, Inc. and SLM Financial Corporation in the amount of $25,000 plus costs "accrued to the date hereof and Plaintiff's reasonable attorney's fees, through the date of this offer." (Doc. 158-3, Ex.). For reasons discussed below, Plaintiff's motion is **GRANTED in part and DENIED in part**.

I.   BACKGROUND

Plaintiff filed this lawsuit on May 24, 2004, against Defendants Equifax Information services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); and Sallie Mae, Inc., for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.§ 1681, *et. seq.*, and for state law claims of libel and negligence. Plaintiff sought actual, compensatory, statutory, and punitive damages against Defendants. Plaintiff subsequently amended her complaint to include SLM Financial Corporation as a Defendant. (Doc. 27).[1]

In February 2005, Plaintiff entered into a confidential settlement agreement with Experian and filed a stipulation of dismissal with prejudice with respect to that Defendant on February 11, 2005. On April 28, 2005, Defendants Sallie Mae and Equifax filed separate motions for summary judgment arguing that Plaintiff had not demonstrated any actual damages as a result of the purported violations of the FCRA and that her libel and negligence claims were without merit, thereby excluding eligibility for punitive damages. (Docs. 103, 104). On January 18, 2006, District Judge Willis B. Hunt entered an order denying in part and granting in part both of the

---

[1] SLM Financial Corporation and Sallie Mae, Inc. are related entities and will be referred to collectively as "Sallie Mae" or "Defendant."

summary judgment motions.  (Doc. 113).  Judge Hunt concluded that Plaintiff had sufficient evidence to proceed with her FCRA claims, but that the record contained no evidence capable of supporting an inference that Equifax or Sallie Mae willfully violated the FCRA.  (Id. at 7-17).  Due to the absence of willfulness, Plaintiff's state law claims were preempted and she was not entitled punitive damages.  (Id. at 7, 10).

On May 9, 2006, the parties attended an unsuccessful settlement conference before Magistrate Judge E. Clayton Scofield.  (Doc. 117).  No additional substantive action was taken in the case until May 15, 2007, when a pretrial conference was held before the undersigned.[2]  (Doc. 129).  A trial was scheduled for August 21, 2007, and was later rescheduled for October 15, 2007.  (Doc. 131, 139).[3]

On October 11, 2007, Sallie Mae served an offer of judgment on Plaintiff in accordance with Federal Rule of Civil Procedure 68.  (Doc. 153).  Plaintiff accepted the $25,000 offer on October 22, 2007.  (Doc. 158).  As noted above, the offer states that Plaintiff is also entitled to costs "accrued to the date hereof" and "reasonable attorney's fees, through the date of this offer."  (Doc. 158-3, Ex.).

---

[2]The parties consented to jurisdiction by a magistrate judge in March 2007.  (See Docs. 124, 125, 126, 127).

[3]Ultimately the trial was scheduled for November 5, 2007, but it did not take place due settlement of all claims.

3

On November 5, 2007, Plaintiff filed the instant motion, but did not at that time include a itemized verification of costs and fees.[4]  (Doc. 159).  Defendant filed a response objecting to the amount requested.  (Doc. 160).  Defendant made some general objections, but noted that it would not be able to provide more specific objections until Plaintiff filed a detailed accounting.  (Id. at 4).  On November 29, 2007, Plaintiff filed a detailed accounting.  (Doc. 162).  Defendant, however, did not file an additional response.

II.   DISCUSSION

The FCRA states that a prevailing plaintiff is entitled to "the costs of the action together with reasonable attorney's fees as determined by the court."  15 U.S.C. § 1681o(a)(2).[5]  Plaintiff requests attorney's fees and costs in the amount of $48,877.34.  This amount reflects 169 hours of work by attorney Lisa D. Wright at a

---

[4]Under Civil Local Rule 54.2A(2), N.D.Ga., Plaintiff was not required to file a detailed itemization of the requested fees and expenses until 30 days after he filed his motion.

[5]"Where cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d)[of the Federal Rules of Civil Procedure] and 28 U.S.C. §§ 1920 and 1923(a) do not apply."  Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1188-89 (11th Cir. 1983).

rate of $250 per hour and costs in the amount of $6,627.34. (Doc. 162). Defendant does not object to Wright's hourly rate but opposes the number of hours for which Plaintiff seeks compensation and the amount of costs. (Doc. 160).

    A.    Attorney's Fees

The first step required for calculation of a reasonable attorney's fee award is for the Court to "multiply the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services to reach a sum commonly referred to as the 'lodestar.'" Association of Disabled Americans v. Neptune Designs, Inc., 469 F.3d 1357, 1359 (11th Cir. 2006)(citing Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983), and Norman v. Housing Auth., 836 F.2d 1292, 1299 (11th Cir. 1988)). "The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit." Association of Disabled Americans, 469 F.3d at 1359.

        1.    Lodestar Calculation

            a.    Hourly Rate

5

A reasonable hourly rate under the lodestar analysis "is the 'prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" Dillard v. City of Greensboro, 213 F.3d 1347, 1354 (11th Cir. 2000)(quoting ACLU v. Barnes, 168 F.3d 423, 436 (11th Cir. 1999)). Defendant does not object to the rate charged by attorney Wright ($250 per hour), and the Court finds that it is reasonable.

### b. Hours Expended on the Litigation

In determining the number of hours reasonably expended on a case, courts must consider whether the work sought to be compensated was "'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." Pennsylvania v. Delaware Valley Citizens' Council For Clean Air, 478 U.S. 546, 561 (1986)(citations omitted). Among other things, fee applicants must exercise "billing judgment" by excluding from their fee applications "excessive, redundant, or otherwise unnecessary [hours]." ACLU of Georgia v. Barnes, 168 F.3d 423, 438 (11th Cir. 1999)(quoting Hensley, 461 U.S. at 434). For courts to determine whether hours requested by an applicant are "excessive, redundant, or otherwise unnecessary,"

6

opponents must make specific and reasonably precise objections. ACLU, 168 F.3d at 428.

Defendant's brief makes only two specific objections to the fees billed by Plaintiff's attorney. First, Defendant argues that Plaintiff should not be reimbursed for hours spent advancing a last minute, amended notice of Rule 30(b)(6), Fed.R.Civ.P., deposition of Defendant. (Doc. 160, Brf. at 5). Defendant states that it was "required, on an emergency basis, . . . to move for a Protective Order and expedite the ruling so as not to delay the scheduled deposition." (Id.). Defendant is apparently referring to a motion filed on February 4, 2005. (Doc. 70). On February 10, 2005, Judge Hunt granted that motion in part and denied it in part. (Doc. 72). Given this resolution of the dispute and the absence of a more detailed argument, the Court cannot find that the hours spent by Plaintiff's attorney on this discovery dispute were unreasonable.

Defendant also argues that time spent deposing a representative of HomeBanc Mortgage Corporation should not be allowed.[6] (Doc. 160, Brf. at 5). Defendant states that the pretrial order submitted by the parties identifies the HomeBanc representative as a witness for the limited purpose of attesting to Plaintiff's "frustration and anxiety,"

---

[6]Plaintiff applied for loans from HomeBanc and encountered problems obtaining approval of the loans due to the inaccuracies in his credit report.

7

whereas the deposition was used primarily to discuss documents related to Plaintiff's loan application. (Id.). Considering the limited information presented by Defendant, the Court cannot conclude that Wright's deposition of a HomeBanc representative was unreasonable.

In the absence of any additional arguments to the contrary, the Court finds that the hours logged by Wright on Plaintiff's behalf – 229.05 – were reasonable. (See Doc. 162-2, Attach. at 12). Plaintiff, however, seeks compensation for only 169 of these hours, having deducted 60.05 hours for time spent exclusively on claims against Equifax and Experian. (See id.). The Court finds that this approach does not fully account for the number of hours attributable to Equifax and Experian; the majority of Wright's time was undoubtedly spent on matters related to all of the Defendants. Moreover, adjustments of this type are best made after the lodestar amount has been calculated. (See infra).

For these reasons, the Court will begin its analysis with the total number of hours expended by Wright on the litigation – 229.05 hours. As an initial matter, the Court will deduct 3.3 hours from the total for time spent on the case after October 10, 2007, the date of the offer of judgment. The adjusted total is 225.75 hours, which when multiplied by $250 per hour provides a lodestar amount of $56,437.50.

### 2. Adjustments to the Lodestar Amount

After calculating the lodestar, the next step in the analysis is to consider whether departure from this amount would be appropriate. See Norman, 836 F.2d at 1302. Defendant argues that it should not be held solely responsible for the number of hours logged by Wright (or even the adjusted number requested by Plaintiff) given that two other defendants were involved in this case. (Doc. 160 at 4). Defendant also notes that Plaintiff's state law claims and her request for punitive damages were dismissed by Judge Hunt. (Id. at 2).

When a plaintiff does not prevail on all of his claims, courts must first determine whether the claims on which the plaintiff did prevail were related to the claims on which he failed. Hensley, 461 U.S. at 434. Related claims "involve a common core of facts," or are based on "related legal theories." Id. at 434-35. If the claims are not related, hours spent pursuing the failed claims must be subtracted from the lodestar. Id. at 435; see also Norman, 836 F.2d at 1302 (noting that, "in determining reasonable hours the district court must deduct time spent on discrete and unsuccessful claims"). In this case, all of Plaintiff's claims were, to a large extent, factually and legally

9

related. Therefore, the Court finds that Plaintiff did not fail to succeed on any claims unrelated to her FCRA claims.

Next, the Court must determine whether Plaintiff achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Hensley, 461 U.S. at 434. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . . [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Hensley, 461 U.S. at 435. See also Norman, 836 F.2d at 1302 ("Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours.").

In this case, it is difficult to assess the results achieved by Plaintiff because the terms of her settlement agreements with Defendants Experian and Equifax have not been disclosed. However, one can safely say that Plaintiff did not achieve the results he initially sought because his claim for punitive damages was dismissed. Given this, as well as the modesty of Plaintiff's settlement agreement with Sallie Mae, the Court finds that a reduction of the lodestar amount by five percent appropriately reflects Plaintiff's level of success. See Popham v. City of Kennesaw, 820 F.2d 1570, 1581 (11th Cir. 1987)(finding that comparison of the requested relief with the relief obtained

10

is relevant to determination of the plaintiff's success). After a five percent reduction, the adjusted lodestar amount is $53,615.63.

Finally, consideration must be given to Defendant's argument that it should not be held responsible for the full amount of attorney's fees given that two other defendants were involved in this case. The Court has discretion both as to when apportionment of fees is appropriate and as to how liability should be divided among the Defendants. Council for Periodical Distributors Associations v. Evans, 827 F.2d 1483, 1487 (11th Cir. 1987). The Court finds that apportionment is needed in this case to avoid a possible windfall in Plaintiff's favor[7] and to prevent the unfairness of making Sallie Mae solely responsible for attorney's fees that should be the joint responsibility of all Defendants. Having made this determination, the Court turns to the apportionment formula best applied in this case.

"There are many possible methods and theories with which to apportion fees." Council for Periodical Distributors, 827 F.2d at 1487. Which ever method is selected, only an "approximation[] of the 'best' division of fees" is possible. Id. at 1488. The Court is not required to engage in "a complex mini-litigation on attorney's fees," but

---

[7]Presumably Plaintiff's settlement agreements with Experian and Equifax have taken attorney's fees into account.

11

rather "to make the best possible assessment consistent with both efficiency and fairness." Id. "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these distinctions.'" Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001).

Permitted methods for apportioning fees include division "according to relative culpability of the various defendants." Council for Periodical Distributors, 827 F.2d at 1487-88. Because this case did not go to trial, the undersigned has referred to Judge Hunt's order regarding the summary judgment motions and to Plaintiff's amended complaint to obtain a sense of relative culpability. (See Docs. 27; 113). Judge Hunt's description of the facts demonstrates that the harm suffered by Plaintiff was the result of a series of errors made by both Equifax and Sallie Mae. Plaintiff's amended complaint indicates that errors made by Experian were similar, though perhaps not as extensive, as those made by Equifax.

Given all of the available information, the Court concludes that the best estimate of relative culpability is to assign 60 percent of the blame to Equifax and Experian combined, and 40 percent to Sallie Mae. One could argue that Equifax and Experian should only bear half the blame because the errors they made overlapped to a

12

significant degree. The Court finds, however, that Plaintiff would have been less likely to suffer from the errors made by Sallie Mae if only one of the two credit reporting agencies had erred. For these reasons, the Court finds that Sallie Mae should be held responsible for only 40 percent of the adjusted lodestar amount, which is equal to $21,446.25.

### B. Costs

"In this circuit the recoverability of costs is determined by the necessities of the case; even relatively large or unusual costs may be taxed when they are reasonably incurred; and there is no bar to complete recovery." Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1191 (11th Cir. 1983). Defendant has made no specific arguments regarding the reasonableness of Plaintiff's costs. The Court, therefore, finds that the amount is reasonable.

Defendant does argue that it should not be taxed the full amount of Plaintiff's costs given the presence of two other defendants. (Doc. 160, Brf. at 4). For the same reasons discussed above, the Court agrees. Sallie Mae is responsible for only 40 percent of the costs reported by Plaintiff, which is equal to $2,650.94.

### III. CONCLUSION

For the reasons stated, Plaintiff Theodore D. Jordan's Motion for Attorney's Fees [Doc. 159] is **GRANTED in part and DENIED in part**. The Clerk of the Court is **DIRECTED** to enter judgment in Plaintiff's favor against Defendants Sallie Mae, Inc. and SLM Financial Corporation in the amount of **$24,097.19**, representing $21,446.25 in attorney's fees and $2,650.94 in costs.

IT IS SO ORDERED, this 25th day of February, 2008.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

T:\FINAL.ORD\JordanEquifaxAttyFees.wpd

AO 72A
(Rev.8/82)