IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THEODORE D. JORDAN, II,<br><br>    Plaintiff,<br><br>   v.<br><br>EQUIFAX INFORMATION SERVICES, LLC; SALLIE MAE, INC.; and SLM FINANCIAL CORPORATION,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 1:04-CV-1451-GGB |

# **FINAL ORDER**

This matter is before the Court on Plaintiff Theodore D. Jordan's Motion for Reconsideration [Doc. 165] of this Court's order of February 25, 2008, granting in part and denying in part Plaintiff's Motion for Attorney's Fees. (Docs. 159, 164).[1] Plaintiff argues that the Court made procedural, legal, and factual errors, resulting in an unfair reduction of the requested fees. For reasons stated below, Plaintiff's Motion for Reconsideration is **GRANTED in part and DENIED in part**.

---

[1] The parties consented to jurisdiction before a magistrate judge in March 2007. (See Docs. 124, 125, 126, 127).

I.    BACKGROUND

Plaintiff's complaint, as amended, accused Defendants Equifax Information services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); Sallie Mae, Inc. ("Salle Mae"); and SLM Financial Corporation ("SLM") of violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq.* During discovery, Plaintiff entered into a confidential settlement agreement with Experian. Shortly before trial was scheduled, Defendants Sallie Mae and SLM served an offer of judgment on Plaintiff in the amount of $25,000 plus costs "accrued to the date hereof" and "reasonable attorney's fees, through the date of this offer." (Doc. 158-3, Attach.). Plaintiff accepted the offer of judgment and subsequently entered into a confidential settlement agreement with Equifax. (See Doc. 161).

In accordance with the offer of judgment, Plaintiff filed a motion seeking attorney's fees and costs in the amount of $48,877.34 from Defendants Sallie Mae and SLM. (Doc. 159). The Court awarded Plaintiff $24,097.19. (Doc. 164). The Court arrived at this figure by calculating a loadstar of $56,437.50, reducing this amount by five percent based on Plaintiff's level of success ($53,615.63), and then apportioning the fee among the various Defendants (including Experian and Equifax) based on the Court's findings regarding their relative culpability. The Court concluded that

2

Experian and Equifax were 60 percent responsible for the harm suffered by Plaintiff and that Sallie Mae and SLM were only 40 percent responsible. The Court applied the same division of responsibility to Plaintiff's costs.

II.   DISCUSSION

    A.   Procedural Argument

Plaintiff first argues that the failure of Defendants Sallie Mae and SLM to object to his attorney's detailed billing statement precludes a reduction of the requested fees. (Doc. 165 at 3-5). The Court does not agree. Although Defendants can be faulted for failing to file a second response, they did file a response to Plaintiff's motion and argued, among other things, that it would be unfair to charge them with all of Plaintiff's expenses given the presence of other defendants. The cases cited by Plaintiff concern adjustments to specific itemized entries on billing statements, not as in this case, an adjustment made based on overall culpability. See Glassroth v. Moore, 347 F.3d 916 (11th Cir. 2003)(involving a complete failure to respond to the attorney fee request); King v. McCord, 707 F.2d 466, 468 (11th Cir. 1983)(stating that, "[i]n a case where part of the attorney's efforts are to go uncompensated [due to unsuccessful claims], the burden is on the attorney [seeking compensation] to provide evidence for

3

the court to make a correct division"); ACLU v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999)(requiring opposing parties to make specific objections regarding the number of hours reasonably expended on the litigation). Furthermore, the Court in fact found that it could not make adjustments to specific entries on counsel's billing statement for precisely the reason asserted by Plaintiff – the absence of specific arguments from Defendants. (See Doc. 164 at 6-8).

    B.    Legal Argument

Plaintiff disputes only the final step in the Court's analysis, the apportionment of fees among all of the Defendants. He argues that the Court erred by including Equifax and Experian (the "settling parties") in the culpability calculation because inclusion of settling parties discourages settlements. (See Doc. 165 at 5-6). In support of this argument, Plaintiff relies exclusively on an unpublished opinion issued by the Court of Appeals for the Eleventh Circuit, United States v. Patrol Services, Inc, No. 06-10836, 202 Fed.Appx. 357 (11th Cir. 2006).

In Patrol Services, the lower court apportioned attorney's fees among the various defendants, including defendants who had settled with the plaintiffs. See Patrol Services, 202 Fed.Appx. at 359-60. On appeal, the plaintiffs objected to the allocation

4

of "a portion of the fees to a defendant who has settled and cannot be liable for any award." Id. at 361.  The Court of Appeals found in the plaintiff's favor and concluded, with little discussion, that allocation of a portion of the fees to a settling party "offends the policy favoring settlements" because "[i]n multi-party litigation, there will be a disincentive to be the first party to settle, because the other parties who wait will have their awards reduced by the settling party's degree of culpability." Id.

The Court finds this unpublished opinion unpersuasive because it conflicts with the reasoning of the Supreme Court in McDermott, Inc. v. AmCLYDE, 511 U.S. 202 (1994).  Although McDermott was an admiralty case and concerned apportionment of damages (as opposed to attorney's fees) among the defendants, its reasoning was not rooted in admiralty law and is applicable in this context.  The issue in McDermott was "whether the liability of the nonsettling defendants should be calculated with reference to the jury's allocation of proportionate responsibility [among all of the defendants], or by giving the nonsettling defendants a credit for the dollar amount of the settlement." McDermott, 511 U.S. at 204.  The issue in the present case, in contrast, is broader – whether the liability of the nonsettling defendants should be calculated in reference to the settling defendants regardless of the method used.

5

The Supreme Court began by noting that "[i]t is generally agreed that when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement,"[2] but that there is "a divergence among respected scholars and judges about how that credit should be determined." McDermott at 208. After rejecting two approaches that would have reduced the liability of the nonsettling parties by the full amount paid by the settling parties (the *pro tanto* rule), the Court concluded that an approach based on relative culpability provided the most equitable and efficient solution. See id. at 211-17.  In reaching this conclusion, the Court made several observations regarding the effects of the *pro tanto* rule on settlements that are relevant here. See id. at 214-215.  The Court stated:

> Sometimes the *pro tanto* approach will better promote settlement. This beneficial effect, however, is a consequence of the inequity discussed above. The rule encourages settlements by giving the defendant that settles first an opportunity to pay less than its fair share of the damages, thereby threatening the nonsettling defendant with the prospect of paying more than its fair share of the loss. By disadvantaging the party that spurns settlement offers, the *pro tanto* rule puts pressure on all defendants to settle. While public policy wisely encourages settlements, such additional pressure to settle is unnecessary. The parties' desire to avoid litigation costs, to reduce uncertainty, and to maintain ongoing commercial relationships is sufficient to

---

[2]This line alone is sufficient to reject Plaintiff's argument.

6

> ensure nontrial dispositions in the vast majority of cases. Under the proportionate share approach, such factors should ensure a similarly high settlement rate. *The additional incentive to settlement provided by the* pro tanto *rule comes at too high a price in unfairness.* Furthermore, any conclusion that the *pro tanto* rule generally encourages more settlements requires many simplifying assumptions, such as low litigation costs. Recognition of the reality that a host of practical considerations may be more significant than stark hypotheticals persuades us that the *pro tanto* rule has no clear advantage in promoting settlements.

McDermott at 214-16 (footnotes omitted, emphasis added). "Just as the other [non-settling] defendants are not entitled to a reduction in liability when the plaintiff negotiates a generous settlement . . . *so they are not required to shoulder disproportionate liability when the plaintiff negotiates a meager one.*" Id. at 221 (emphasis added).[3]

The reasons given by the Supreme Court for rejecting the *pro tanto* rule conflict with the Court of Appeals' finding in Patrol Services that inclusion of settling defendants in the calculation of relative culpability discourages settlements. Indeed, the reasoning is even more persuasive in the instant context because *complete* failure

---

[3]To the extent the Court relied on a possible windfall to Plaintiff in its prior opinion, it now finds that this is not an appropriate factor. See McDermott, 511 U.S. at 218 ("The law contains no rigid rule against overcompensation. Several doctrines . . . recognize that making the tortfeasors pay for the damage they cause can be more important than preventing overcompensation.").

7

to include the settling defendants in the calculation could result in an even greater disproportionality between the non-settling defendants' liability and their culpability than would occur with application of the *pro tanto* rule. Because discouragement of settlements is the only reason given by the Court of Appeals for its holding in <u>Patrol Services</u>, the Court finds it to be unpersuasive. The reasoning in <u>McDermott</u> leads inexorably to the conclusion that Defendants Sallie Mae and SLM should not be held responsible for more than their proportionate share of Plaintiff's attorney's fees.

### C.     <u>Factual Argument</u>

Plaintiff also argues that this Court's factual findings with respect to relative culpability are not supported by the evidence, and that Sallie Mae and SLM are primarily responsible for Plaintiff's injuries. (Doc. 165 at 7-10). The Court has reviewed the facts and finds that Plaintiff is partially correct; Sallie Mae and SLM are relatively more culpable than the Court originally determined. As found in Judge Hunt's order regarding the motions for summary judgment, Sallie Mae and SLM contributed to the error in Plaintiff's credit reports by (1) initially verifying the fraudulent loan without conducting a thorough investigation, especially in light of the fact that Plaintiff had previously informed SLM that the loan was fraudulent, (2)

8

assigning the loan a new account number when it was transferred from SLM to Sallie Mae without ensuring that the notation regarding its status as a fraudulent loan was maintained, and (3) failing to correct this error once notified by Equifax that the loan was fraudulent. (Doc. 113 at 2-4). Equifax's primary mistake, in contrast, was failing to suppress the second account number from reappearing on Plaintiff's credit report after it had initially been cleared.

Given these facts, the Court finds that it erred in assigning 60 percent of the blame to Equifax and Experian and only 40 percent to Sallie Mae and SLM. However, the Court does not believe, as suggested by Plaintiff, that Sallie Mae and SLM should bear 75 percent of the blame. The Court concludes that the best estimate of relative culpability is to assign 60 percent of the blame to Sallie Mae and SLM and 40 percent to Equifax and Experian. The adjusted calculation results in attorney's fees in the amount of $32,169 and costs in the amount of $3,976, for a total of $36,145.

AO 72A
(Rev.8/82)

III.  CONCLUSION

For the reasons stated, Plaintiff Theodore D. Jordan's Motion for Reconsideration [Doc. 165] is **GRANTED in part and DENIED in part**.  The Clerk of the Court is **DIRECTED** to enter judgment in Plaintiff's favor against Defendants Sallie Mae, Inc. and SLM Financial Corporation in the amount of **$36,145**, representing $32,129 in attorney's fees and $3,976 in costs.

IT IS SO ORDERED, this 25th day of March, 2008.

_Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

T:\FINAL.ORD\JordanEquifaxReconsider.wpd

AO 72A
(Rev.8/82)